UNITED STATES of America, Plaintiff-Appellee,

v.

Cesario GUEVARA–MARTINEZ, Defendant-Appellant.

No. 78–5686.

United States Court of Appeals, Fifth Circuit.

June 28, 1979.

J. C. Codias, Harris Tannenbaum, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, CLARK and FAY, Circuit Judges.

WISDOM, Circuit Judge:

In this appeal it is necessary to use an Alexander's method for dealing with tangles.

This appeal is from an order revoking probation. Guevara-Martinez, the defendant-appellant, a native of Mexico, was indicted in 1976 for violation of 8 U.S.C. § 1325 (entering United States without examination and inspection) and 8 U.S.C. § 1326 (illegally present in United States after having been previously deported). In accordance with a plea bargain, negotiated by court-appointed counsel, he pleaded guilty to the § 1326 charge, admitting that he was lawfully deported in 1974 and was illegally present in the United States in 1976. On April 2, 1976, the district court sentenced the defendant to two years imprisonment, but suspended the sentence and imposed as a special condition of five years probation that "the defendant not be found illegally in the United States on or after May 15, 1976". As Judge Clark, a member of the panel, succinctly pointed out during the oral argument, the defendant "had to get legal, get out, or go to jail" by May 15, 1976.

In December 1976 the defendant returned to Mexico because of the death of his mother. In May 1977 he illegally reentered this country. On these bare facts, it would appear that Guevara-Martinez had ignored the condition of his probation and was therefore subject to the legal effects of that violation.

In August 1978 an agent in the Immigration and Naturalization Service (INS) discovered the deportation order and reported the defendant's presence in the United States to the probation officer who initiated this proceeding to revoke the defendant's probation.[1]

Addressing the Court, the attorney for the INS stated that Guevara-Martinez "was sentenced to a particular probationary period under the special condition that he may not be found within the United States illegally after May 15, 1976. And he was in fact, arrested . . . just yesterday or the day before." He explained that "we may have a problem as to whether or not this defendant can speak English well enough to completely understand what's going on." The defendant was represented by

1. Orders of deportation are within the province of the Attorney General, not the judiciary. 8 U.S.C. §§ 1251–1255; *United States v. Hernandez*, 2 Cir. 1978, 588 F.2d 346, 350–52; *United States v. Castillo-Burgos*, 9 Cir. 1974, 501 F.2d 217, 219–20, *cert. denied*, 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284.

counsel who understood Spanish and explained the case to his client.

The district judge stated from the bench:

"I say, I can't pardon Mr. Guevara from not obeying the orders of this Court, and just by main strength and awkwardness crossing the river and coming back.

But I say this. He had some provocation, if that thing has been sitting there two years and they [INS] have done nothing about it."

Notwithstanding his recognition that the INS had provoked the defendant's violation of the probation condition, the district judge felt compelled to revoke the probation.

If we add flesh to the bare bones thus far referred to, we find that Guevara-Martinez was not the law defier that at first glance he appears to have been.

We have no criticism of the district court. This Court well understands the reaction of the district judge. The integrity of court orders must be preserved.

Circumstances extrinsic to the record or subsequent to the time of sentencing point to a latent ambiguity in the order. INS agents were present in the courtroom when the district judge imposed the sentence. They immediately arrested the defendant, took him to jail, released him on bond, and scheduled a deportation hearing for June 24, 1976! This action of the INS, therefore, scheduling a hearing for and holding a hearing over a month after May 15, when the defendant was to "get legal, get out, or go to jail", made it impossible for the defendant to comply with the condition on which probation was based. Certainly, it was not unreasonable for the defendant to conclude that he was legally in the country while he was under the control of the INS. That agency must have reached the same conclusion. The INS agents certainly knew that the defendant would be in this country after May 15, 1976.

The INS continued in that belief. At the June 24th deportation hearing the immigration judge stayed the INS proceedings to enable the defendant to marry his fiancée and to allow her to file a I–130 petition classifying the defendant an alien spouse of an American citizen, which would give him a preferred status in his application for a visa. Guevara-Martinez married his fiancée, and on November 9, 1976, she filed the I–130 petition. That same day the defendant appeared at the INS office with his attorney and registered on the agency's "docket control" of registered aliens. The INS gave the defendant an I–94 form showing that that he had so registered. The INS also gave the defendant a work authorization form.

The INS, therefore, did not regard May 15, 1976, as a sacramental date for determining the legality of the defendant's status in this country. Or, perhaps, both the INS and the defendant considered that the control the agency exercised over the defendant made his presence legal in this country.

In December 1976 the defendant's mother died. The defendant, accompanied by his attorney, went to the INS office and requested permission to go to Mexico because of his mother's death. The permission was granted, and he was given certain forms to sign and present to the border immigration officials. It was agreed that, since he had no visa, he would wait in Mexico for approval of his wife's I–130 petition. He was told that the petition would be approved no later than within three months. The defendant returned to Mexico in December 1976. He reported to the American consulate in Monterey and asked the consulate officials to keep him posted on the status of his wife's I–130 petition. Five months went by. He heard nothing about his wife's petition. Then, yielding to importunities from his wife, he illegally reentered the United States to rejoin his wife. He reported to the INS office and inquired about the status of his wife's petition. Over a year had transpired without any action by the INS. No deportation proceedings had taken place and no finding of deportability had been made. The INS never informed the defendant that he might be in violation of the probation order.

In the meantime, or perhaps even before the defendant went to Mexico, the INS badly stumbled twice. First, the agency set up two separate files on the defendant. The first file contained the record of his 1974 deportation and the 1976 proceedings before Judge Edenfield. The second file contained only his wife's I–130 petition. Thus, the INS officials handling the petition did not realize that the defendant had been deported once and was under Judge Edenfield's order of probation. The second and more important stumble was the INS's losing the I–130 petition for about nine months. Had it not been lost, the defendant might have obtained his visa long before he left Mexico.

In late summer of 1977, the INS finally found the I–130 petition. INS requested the defendant to appear before it in August 1977. At this time, the INS still had not consolidated the two files it had on the defendant, and thus it still did not realize that he had an earlier immigration record. For some reason, probably related to the filing errors, the INS also did not realize that the defendant had returned to Mexico in December 1976, and that his presence in the United States in August 1977 suggested that he had illegally reentered this country. In November 1977 the defendant appeared at the INS office at the agency's request to fill out a "deportable alien" form. That was a year and a half after the May 15, 1976 date. In this meeting the defendant stated to the agency that he had no previous immigration record. There is no satisfactory explanation for this misstatement. It might be attributable to his lack of knowledge of English.

On August 14, 1978, the INS finally *approved* the I–130 petition filed by the defendant's wife, giving him a preferred status. The INS has never explained why it took almost two years to process that petition. On August 24, 1978, the INS finally discovered that it had two files on the defendant. INS agents noted the condition of probation. They called this to the attention of the defendant's probation officer, who instituted this revocation proceeding.

Although we do not question the propriety of the continued control the INS exercised over the defendant, that control rendered the district court's order ambiguous to the defendant. In this phase of the proceedings the defendant is charged only with violating the condition on which probation was granted. From the time the order was rendered the INS knew that the May 15, 1976 date could not possibly be met. The date quickly came and went. Still the INS failed to inform Guevara-Martinez, the probation office, or the district court that the defendant was not in compliance and could never have complied with the condition for his probation.

The irony in the situation is that the INS apparently was attempting to help the defendant. It cooperated with him when he went to Mexico. Unfortunately, the actions of its agents present at the sentencing and its clumsy filing system must be held responsible for the sad events that placed the defendant in the position of violating a court order incapable of compliance. At the very time the district court order was rendered, certainly shortly thereafter, INS agents or attorneys could have pointed out that May 15 was unrealistic. So, too, could court-appointed counsel for the defendant. The defendant could hardly understand English, but he is not an innocent; he had illegally entered this country twice before. In any event, on the facts before us in this case, he had good reason to believe that if he cooperated with the INS, as he attempted to do (except for his illegal entry in this country late in the day), that agency would work it out, in his interest and within the law. This certainly was the effect created by the administrative law judge's order staying the deportation proceedings and also the impression created by the INS in its dealings with the defendant after his arrest. And to this day there is no order to deport Guevara-Martinez.

In these circumstances, we hold that the interests of justice require that the case be remanded to the district court for reconsideration of the original judgment, sentence, and order revoking probation.

REMANDED.