IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-10191

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMWILLIAM AYI QUAYE,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(June 21, 1995)

Before HIGGINBOTHAM and PARKER, Circuit Judges, and BROWN[*], District Judge.

HIGGINBOTHAM, Circuit Judge:

Samwilliam Quaye pled guilty to making false statements on immigration documents and education grant program applications. The district court sentenced him to ten months incarceration and ordered him deported as a condition of his supervised release. Quaye appeals. We must decide the statutory authority of a federal court to order the deportation of an alien and the amount of loss caused by Quaye.

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

Quaye argues that the district court erred in increasing his offense level under U.S.S.G. § 2F1.1(b)(1)(D) based on a finding that he caused losses of over $10,000. Quaye argues that had the court found he caused a loss of less than $10,000, he would have had a lower offense level under U.S.S.G. § 2F1.1(b)(1)(C), which, combined with his criminal history category I, would have capped his sentence at six months. Quaye has been in custody since September 16, 1994. We granted an expedited appeal.

Application Note 7(b) to U.S.S.G. § 2F1.1 provides that "[i]n fraudulent loan application cases . . . the loss is the actual loss to the victim . . . However, where the intended loss is greater than the actual loss, the intended loss is to be used." Quaye received $10,504 in loans, which was reduced by $1,065 when he dropped some of his courses for the 1992-93 academic year. He would probably have received $6,025 for the upcoming third year had his false statements not been detected.

Quaye argues that he intended to repay the money. The government argues that Quaye had no such intent. The district court failed to make a finding as to whether Quaye would pay back the loans; instead, it appears to have rested its sentencing decision on the finding that Quaye intended to <u>receive</u> the final loans. Without a finding that Quaye did not intend to repay the loans, we must vacate the portion of Quaye's sentence increasing his offense level by three levels under U.S.S.G. § 2F1.1(b)(1)(D).

We remand to the district court to calculate Quaye's sentence and order his release if he has served the sentence, as recalculated. In this new calculation, his sentence can be increased by no more than two levels under U.S.S.G. § 2F1.1(g)(1)(c).

## II.

Quaye also argues that the district court erred in ordering him deported under 18 U.S.C. § 3583(d). In relevant part, § 3583 provides that "if an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation." Quaye argues that the district court exceeded its authority in ordering him deported as a condition of supervised release. We have not spoken on this question, and the Eleventh Circuit and First Circuit are split.

The Eleventh Circuit supports the district court's view. In United States v. Chukwura, 5 F.3d 1420, 1423 (11th Cir. 1993), cert. denied, 115 S. Ct. 102 (1994), the Eleventh Circuit held that the plain language of § 3583(d) gave district courts the power to order a defendant deported as a condition of supervised release. The court held that § 3583(d) did not intrude upon the INS's authority to deport resident aliens because the INS still retains the power to carry out deportations. See id. at 1423.

We disagree and subscribe to the First Circuit's interpretation of § 3583(d). In United States v. Sanchez, 923 F.2d

3

236, 237 (1st Cir. 1991) (per curiam), the First Circuit held that § 3583(d)

> simply permits the sentencing court to order, as a condition of supervised release, that "an alien defendant [who] is subject to deportation" be surrendered to immigration officials for deportation proceedings under the Immigration and Naturalization Act. In other words, following appellant's surrender to Immigration authorities, he is entitled to whatever process and procedures are prescribed by and under the Immigration and Naturalization Act for one in appellant's circumstances, for the purpose of determining whether he is "an alien defendant . . . subject to deportation."

The Solicitor General has supported the position of Quaye and the First Circuit in a brief in support of a grant of certiorari in Chukwura.[1] The text of § 3583(d), the Solicitor General argued, authorizes district courts to "provide," not "order," that an alien be deported and remain outside of the United States. Congress used the verb "order" elsewhere in Section 3583(d), implying that its choice of the verb "provide" was intentional here.

Section 3583(d)'s language authorizing deportation "as a condition of supervised release" also favors the First Circuit's interpretation, the Solicitor General argued. Under this reasoning, if the Attorney General did not order a defendant deported, the condition of supervised release would fail, and the court could revoke his supervised release. The court could not, under this interpretation, order the Attorney General to deport the defendant if she chose not to do so.

---

[1] The Supreme Court has denied certiorari in that case. See 115 S. Ct. 102 (1994).

4

The Solicitor General further argued that his reading would leave meaning for § 3583(d); that otherwise, deportation under the INA could conflict with the standard provision of supervised release that the defendant not leave the judicial district without permission of the court or probation officer. Section 3583(d) prevents any such conflict by authorizing the court to permit the Attorney General to deport defendant during his term of supervised release.

The First Circuit's interpretation of § 3583(d) also preserves Congress's long tradition of granting the Executive Branch sole power to institute deportation proceedings against aliens. We are unwilling to conclude that Congress intended to undermine that executive prerogative <u>sub</u> <u>silentio</u> in § 3583(d), or that Congress intended by its silence to deprive aliens deported at sentencing of such relief as alien asylum, which the Attorney General may grant.

We insist on greater clarity of purpose when a statute would be read to upset a status quo long in place. Indeed, here, the history of this statute is a powerful argument that Congress never intended to alter this traditional allocation of power between the Article II and Article III branches of government. Section 3583(d)'s predecessor, enacted in 1931, provided that

> where a Federal prisoner is an alien and subject to deportation the board of parole may authorize the release of such prisoner after he shall have become eligible for parole on condition that he be deported and remain outside of the United States and all places subject to its jurisdiction, and upon such parole becoming effective said prisoner shall be delivered to the duly authorized immigration official for deportation.

Law of Mar. 2, 1931, ch. 371, 46 Stat. 1469.

5

The 1931 Act permitted deportation of an alien prisoner in spite of the then-current parole rule that demanded that a prisoner remain within the court jurisdiction. Far from empowering the Parole Board to usurp the Executive Branch's deportation power, the 1931 Act only provided a means by which an alien could be deported upon parole. § 3583(d), the present codification of its predecessor, paves the way for Executive Branch deportation proceedings; it does not permit courts to order deportation alone.

But, the phrasing of the modern version has caused some confusion. In apparent response, Congress amended 8 U.S.C. § 1252a(d) in 1994 to read:

(1) Authority

Notwithstanding any other provision of this chapter, a United States district court shall have jurisdiction to enter a judicial order of deportation at the time of sentencing against an alien whose criminal conviction causes such alien to be deportable under section 1251(a)(2)(A) of this title, if such an order has been requested by the United States Attorney with the concurrence of the Commissioner and if the court chooses to exercise such jurisdiction.

Under the 1994 amendment, the district court may order deportation only "if such an order has been requested by the United States Attorney." The U.S. Attorney did not make such a request here, and it is not applicable here.

Although the government concedes that the Solicitor General's argument has force, the prosecution argues in the alternative that the 1994 amendment provides a kind of retroactive legislative history, demonstrating that "Congress intended District Courts to have deportation power over convicted aliens in certain

6

circumstances and that Congress has now provided the procedure for such a deportation to be achieved."

However, the retroactive legislative history can be read the other way just as easily. The fact that Congress gave the district courts the power to order deportations in 1994 could illustrate that Congress believed that the district courts lacked that power before the amendment. Further, reading the 1994 amendment to overlay a congressional understanding that district courts may order deportations would create an extraordinary set of rules. Section 3583(d) would permit district courts to deport any deportable aliens without affording them any procedural safeguards, but the 1994 amendment would protect deportable aliens convicted of particularly heinous crimes[2] with more expansive procedural checks, including the requirement that the U.S. Attorney must request deportation and that the Commissioner must concur.

We are persuaded by the arguments of the Solicitor General and the reasoning of the First Circuit. We hold that the district court exceeded its statutory power under § 3583(d) in ordering Quaye deported as a condition of supervised release. Because the 1994 amendment does not apply here, we adopt the language of the First Circuit in <u>Sanchez</u>, 923 F.2d at 238, and ORDER that the judgment below to be amended as follows:

---

[2] The 1994 amendment applies only to those aliens deportable under 8 U.S.C. § 1251(a)(2)(A); that is, those convicted of crimes of moral turpitude, those with multiple criminal convictions involving moral turpitude, or those convicted of an aggravated felony.

7

> As a condition of supervised release, upon completion of his term of imprisonment the defendant is to be surrendered to a duly-authorized immigration official for deportation in accordance with the established procedures provided by the Immigration and Naturalization Act, 8 U.S.C. §§ 1101 <u>et</u> <u>seq</u>. As a further condition of supervised release, if ordered deported, defendant shall remain outside the United States.

We VACATE the portion of Quaye's sentence based upon U.S.S.G. § 2F1.1(b)(1)(D), holding that his sentence can be increased by only two levels under U.S.S.G. § 2F1.1(b)(1)(C), and REMAND to allow the district court to recalculate Quaye's sentence.

VACATED in part, MODIFIED in part, and REMANDED.