BARKETT, Circuit Judge, dissenting, in which KRAVITCH, ANDERSON, BIRCH and CARNES, Circuit Judges, join:

I believe the majority errs in adhering to United States v. Chukwura, 5 F.3d 1420 (11th Cir. 1993), cert. denied, 115 S. Ct. 102 (1994). Like the First, Fourth, and Fifth Circuits, I believe that 18 U.S.C. § 3583(d) provides only that a defendant who is subject to deportation may be surrendered to the INS for deportation proceedings in accordance with the Immigration and Naturalization Act ("INA").[1] Because the language of § 3583(d) is subject to different interpretations, we must look to the overall statutory scheme, and prior legislative and judicial history, which I believe support the view that a district court may only surrender a defendant who is subject to deportation to the INS for deportation proceedings, not independently order the deportation.

First, although the majority purports to rely on the "plain language" of § 3583(d) to support its conclusion, the language of the statute is not so plain. It provides, in relevant part:

> If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

18 U.S.C. § 3583(d).

Section 3583(d) does *not* state that the court may "order" that the alien be deported; it instead permits the court to "provide" that the alien be deported and remain outside of the United States. That

---

[1] As the majority notes, the three other circuits to interpret § 3583(d) have held that the section, read in light of the provisions of the INA, does not authorize judicial deportations, United States v. Xiang, 77 F.3d 771, 772 (4th Cir. 1996); United States v. Quaye, 57 F.3d 447, 449-51 (5th Cir. 1995); United States v. Sanchez, 923 F.2d 236, 237 (1st Cir. 1991).

choice of words does not appear to have been inadvertent.  The two preceding sentences in § 3583(d) identify things that the court may "order" the defendant to do or not to do as conditions of supervised release, and the final clause of the final sentence states that the court may "order" that the defendant be delivered to a duly authorized immigration official for deportation.  In this statutory context, the term "provide" in the portion of the sentence at issue here indicates that it is intended to authorize the court to "make provision" for the alien's deportation, thereby facilitating such action by surrendering the defendant to the INS deportation proceedings, but not to *order* the INS to deport the defendant without the attendant process established by the INA.  See Webster's Third New International Dictionary 1827 (1986) (defining "provide").

Furthermore, § 3583(d) authorizes the court to provide that the defendant be deported "as a condition of supervised release." That language similarly weighs against Chukwura's interpretation of § 3583(d).  By stating that the court may include deportation as a condition of supervised release, the language implies that the consequence of a failure to satisfy that condition (where, for example, the INS does not order the defendant deported) is that the court may revoke the defendant's supervised release pursuant to § 3583(e)(3) and require the defendant to serve the period of supervised release in prison -- not that the court may independently

2

order the INS to deport the defendant.[2] If Congress intended to authorize a court to enter a judicial order of deportation outside the framework of the INA, it more likely would have included such a measure as an independent element of the sentence, rather than as a condition of supervised release, which is limited, of course, to those deportable alien defendants for whom supervised release is ordered at sentencing.

Indeed, the majority fails to consider the purpose of § 3583(d) as a whole, which provides for <u>supervised</u> release. Without a provision such as the last sentence of § 3583(d), "administrative" deportation by the INS might be regarded as inconsistent with *judicially supervised* release, which requires a defendant to *not leave the judicial district without the permission of the court or probation officer*. The relevant provision, therefore, removes any doubt about the INS's authority to deport the defendant after his period of imprisonment ends and he is placed on supervised release, and is an efficient mechanism by which the court "permits" the defendant to leave the judicial district if the INS orders him to be deported.

Interpreting § 3583(d) as simply facilitating the surrender of defendants subject to deportation to the INS for deportation proceedings also conforms with the uniform historical practice of Congress conferring the authority to institute deportation

---

[2] For example, if the defendant is not ordered deported by the INS -- either because he is not found to be deportable, or is granted discretionary relief from deportation -- the sentencing court could, in the alternative, modify the order of supervised release to delete the deportation provision. <u>See generally</u>, 18 U.S.C. § 3583(e) (2). Under Chukwura, however, the INS has no opportunity to make this determination, or to grant discretionary relief.

proceedings against an alien on Executive Branch officials. Congress has acted pursuant to the constitutional understanding that the "power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953).

The INA, in 8 U.S.C. § 1252 and implementing regulations, has established the administrative procedures used by the Attorney General in determining whether an alien who is charged with being deportable under 8 U.S.C. § 1251 is, in fact, deportable. Section 1252(b) provides that "the procedure so prescribed shall be the *sole and exclusive procedure* for determining the deportability of an alien under this section," and that "[i]n any case in which an alien is ordered deported from the United States under the provisions of this chapter, or of any other law or treaty, the decision of the *Attorney General* shall be final." (emphasis added). See also 8 U.S.C. § 1103(a) ("The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers"); Sale v. Haitian Centers Council, Inc., 113 S.Ct. 2549, 2559-60 (1993).

The reference to deportation in § 3583(d) is contained in a single sentence that does not expressly carve out an exception to

4

the Attorney General's authority over immigration matters, and the legislative history discloses no evidence of congressional intent to do so.  It is very unlikely that Congress intended through that single sentence to displace the Attorney General's authority and enforcement discretion in determining whether to institute deportation proceedings against an alien, and, if found deportable, whether to grant the alien discretionary relief.[3]  It is also very unlikely that Congress, without saying so, intended § 3583(d) to have the effect of rendering the aliens to whom it applies altogether ineligible for such discretionary relief.  As the Quaye court noted:

> The First Circuit's interpretation of § 3583(d) also preserves Congress's long tradition of granting the Executive Branch sole power to institute deportation proceedings against aliens.  We are unwilling to conclude that Congress intended to undermine that executive prerogative sub silentio in § 3583(d), or that Congress intended by its silence to deprive aliens deported at sentencing of such relief as alien asylum, which the Attorney General may grant.

Quaye, 57 F.3d at 449-50.

The background of § 3583(d) further reinforces my reading of the statute.  The initial predecessor of the current § 3583(d) was enacted in 1931 as an amendment to the former 18 U.S.C. § 716 (1925), which governed the parole of prisoners.  The amendment provided that

> where a Federal prisoner is an alien and subject to deportation the board of parole may authorize the release

---

[3]  Even if an alien is deportable, the INA confers on the Attorney General the authority to grant the alien asylum, or other relief from deportation.  See, e.g., 8 U.S.C. §§ 1158, 1182(c), 1253(h), 1254(a) and (e).

5

of such prisoner after he shall have become eligible for parole on condition that he be deported and remain outside of the United States and all places subject to its jurisdiction, and upon such parole becoming effective said prisoner shall be delivered to the duly authorized immigration official for deportation.

Act of March 2, 1931, ch. 371, 46 Stat. 1469.

The committee reports accompanying the 1931 Act explained that because the rules governing parole required that a prisoner remain *within the jurisdiction* of the court, an alien prisoner, who if paroled would be deported, could not be paroled. The legislation was therefore designed to make it possible for prison authorities "to surrender the alien prisoner to immigration officials for deportation" as soon as the prisoner became eligible for parole, "thus shortening the time the Government must retain him in custody." S. Rep. No. 1733, 71st Cong., 3d Sess. 1 (1931)("Senate Report"); H. R. Rep. No. 1035, 71st Cong., 2d Sess. 1 (1930). The Senate Report reproduced a letter requesting passage of the legislation from Attorney General William D. Mitchell, which stated:

> At the present time there are several hundred inmates serving sentences in Federal prisons who should be deported. Under the present state of the law it has been deemed inconsistent to grant a parole and then immediately take the prisoner into custody under deportation proceedings. Specific authority to parole prisoners who are aliens and subject to deportation seems necessary.

Senate Report at 2. The 1931 Act did not authorize the Parole Board to order the deportation of an alien and supplant the normal deportation procedures. It was intended, rather, to provide a

mechanism to grant an alien parole "and then immediately take the prisoner into custody under deportation proceedings." Senate Report at 2 (emphasis added). The provision was judicially construed in that manner in Secchi v. U.S. Bureau of Immigration, 58 F. Supp. 569 (M.D. Pa. 1945), in which the court explained that the alien's parole was "conditional for his deportation to England." Id. at 570. The court explained that parole

> is not for the petitioner's general release from imprisonment and can become effective only if and when the duly authorized immigration officials make the necessary arrangements for the deportation of the petitioner, at which time the prisoner shall be delivered to them. . . .
>
> *The action of the Parole Board cannot compel the Immigration Authorities to complete deportation proceedings.* The parole is granted in order to remove an obstacle in the action contemplated by the Immigration Authorities. The action of the Parole Board is taken so that if the Immigration Authorities desire to complete the deportation, they may complete it effectively without being compelled to await the completion of the service of petitioner's sentence.

Id. (citations omitted) (emphasis added). The provision was subsequently recodified at 18 U.S.C. § 4204 (1952), see Act of June 25, 1948, ch. 645, § 4204, 62 Stat. 854, and later at 18 U.S.C. § 4212 (1976), see Parole Commission Reorganization Act., Pub. L. No. 94-233, § 4212, 90 Stat. 227 (Mar. 15, 1976).

Section 4212 was repealed by the Sentencing Reform Act of 1984, which eliminated the parole system and instituted the system of supervised release, including the current § 3583(d) at issue here. See Pub. L. No. 98-473, Tit. II, ch. 2, §§ 218(a)(5), 235, 98 Stat. 2027, 2031. Although the committee reports on the Sentencing

Reform Act do not specifically discuss the relevant sentence of § 3583(d) concerning deportation of aliens, it is obvious that the sentence was patterned after the former § 4212.[4] This background suggests that § 3583(d), like its predecessor governing parole, does not authorize a judicial order of deportation, but instead preserves the established procedures under the authority of the INS for effecting the deportation of an alien.

I believe the First, Fourth, and Fifth Circuits' interpretation of § 3583(d) is not only truer to the overall scheme Congress developed to deal with questions concerning immigration law, but also consistent with the case law interpreting other sentencing provisions. District courts historically have lacked the authority to order the deportation of alien defendants who appear before them for criminal sentencing. United States v. Guevara-Martinez, 597 F.2d 954, 955 n.1 (5th Cir. 1979) (holding that judiciary lacks authority to order deportation).[5] E.g., United States v. Olvera, 954

---

[4] The former 18 U.S.C. § 4212 (1982), as in effect when the Sentencing Reform Act was passed, provided:

> When an alien prisoner subject to deportation becomes eligible for parole, the Commission may authorize the release of such prisoner on condition that such person be deported and remain outside the United States.
>
> Such prisoner when his parole becomes effective, shall be delivered to the duly authorized immigration official for deportation.

[5] Pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), decisions of the former Fifth Circuit entered prior to the split establishing the Eleventh Circuit are binding on the Eleventh Circuit.

F.2d 788, 793-94 (2d Cir. 1992) (holding that sentencing court cannot order deportation as part of sentence); United States v. Jalilian, 896 F.2d 447, 448-49 (10th Cir. 1990) (holding illegal deportation as condition of probation pursuant to 18 U.S.C. § 3563); United States v. Montoya, 891 F.2d 1273, 1293 n.24 (7th Cir. 1989) (noting in dictum that institution of deportation proceedings lies within sole discretion of Attorney General); United States v. Abushaar, 761 F.2d 954, 959-61 (3d Cir. 1985) (holding that 18 U.S.C. § 3651 does not permit banishment of alien defendant as condition of probation); United States v. Hernandez, 588 F.2d 346, 350-52 (2d Cir. 1978) (declaring condition of deportation illegal as special parole term); United States v. Castillo-Burgos, 501 F.2d 217, 219-20 (9th Cir. 1974) (holding sentence of deportation to be illegal).      Subsequent congressional action also lends support to the view that § 3583(d) does not authorize district courts to independently order deportations.  Since Chukwura was decided, Congress amended 8 U.S.C. § 1252a(d) to permit limited "judicial" deportation of aliens convicted of crimes of moral turpitude or aggravated felonies, but only upon the request of the U.S. Attorney and the concurrence of the INS.  The 1994 amendment provides that

> [n]otwithstanding any other provision of this chapter, a United States district court shall have jurisdiction to enter a judicial order of deportation at the time of sentencing against an alien whose criminal conviction causes such alien to be deportable under section 1251(a)(2)(A) of this title, if such an order has been requested by the United States Attorney with the concurrence of the Commissioner [of the INS] and if the court chooses to exercise such jurisdiction.

8 U.S.C. § 1252a(d)(1) (emphasis added).

As Quaye recognized, to read a general power of judicial deportation into § 3583(d), in light of this intervening amendment to § 1252a, would permit district courts to deport some aliens convicted of relatively less serious crimes without affording them any procedural safeguards, with the inapposite result that aliens convicted of particularly heinous crimes would receive the more expansive procedural checks available within the auspices of the Attorney General and INS.[6]  Quaye, 57 F.3d at 450; see also Xiang, 77 F.3d at 773 ("The exception that Congress provided for judicial deportation would be meaningless if we could now read § 3583(d) to authorize judicial deportation for lesser crimes without any procedural safeguards.").  "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 3252 (1982); In re Chapman, 116 U.S. 661, 667, 17 S.Ct. 677, 680 (1897) ("nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion").

Accordingly, for the foregoing reasons, I do not believe

---

[6]  Ironically, if Bowen were convicted not of illegal reentry into the United States and misdemeanor possession of marijuana, but a more serious offense such as murder, he would have been entitled to the greater procedural safeguards established by § 1252a. Section 1252a is inapplicable to Oboh's sentencing, however, because it had not yet taken effect at the time Oboh entered his guilty plea.

10

district courts have the authority to independently order
deportation.[7]

---

[7] Because I believe that the district court had no authority to order Oboh deported, I do not address the majority's holding that Oboh received adequate notice as to his deportability.  By not addressing it, I do not mean to imply agreement with the majority's resolution of the issue.