AMENDED*

PUBLISH

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

———————————————————————

No. 94-8154

———————————————————————
D.C. Docket No. 1:93-00318-CR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HENRY OLUSHOLA OBOH,
a/k/a Henry Osa Omoboh,
a/k/a James Clark a/k/a Derick Foster,

Defendant-Appellant.

———————————————————————

No. 95-8143

———————————————————————
D.C. Docket No. 1:94-00398-CR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MITCHEL AUGUSTUS BOWEN,

Defendant-Appellant.

———————————————————————————————————————————
Appeals from the United States District Court
for the Northern District of Georgia
———————————————————————————————————————————
**(August 8, 1996)**

Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON,
EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit
Judges, and HENDERSON**, Senior Circuit Judge.

------------------------
*This amendment includes concurrences of Judges KRAVITCH,
ANDERSON, BIRCH and CARNES in the dissent of Judge BARKETT.

**Senior U.S. Circuit Judge Albert J. Henderson has elected to
participate in the decision in case No. 94-8154 pursuant to 28
U.S.C. § 46(c).

HATCHETT, Circuit Judge:

In this consolidated appeal, the en banc court decides that it will not overturn United States v. Chukwura, 5 F.3d 1420 (11th Cir. 1993), cert. denied, 115 S. Ct. 102 (1994).

In Chukwura, a panel of this court held that 18 U.S.C. § 3583(d) authorized a district court to order the deportation of a defendant "subject to deportation" as a condition of supervised release.  Chukwura, 5 F.3d at 1423.  Prior to the panel's opinion in Chukwura, the First Circuit held that district courts lacked authority under section 3583(d) to order deportation and that section 3583(d) merely permitted the district court to order the surrender of the defendant to the Immigration and Naturalization Service (INS) to receive process in accordance with the Immigration and Naturalization Act.  See United States v. Sanchez, 923 F.2d 236 (1st Cir. 1991).  Since Chukwura, the Fourth and Fifth Circuits have also addressed this issue and joined the First Circuit in holding that section 3583(d) does not permit district courts to order deportation as a condition of supervised release.  See United States v. Xiang, 77 F.3d 771 (4th Cir. 1996); see also United States v. Quaye, 57 F.3d 447 (5th Cir. 1995).  In light of the Fourth and Fifth Circuits' recent rejection of the panel's holding in Chukwura, a majority of judges in regular active service voted to address this issue en banc in these cases.

### FACTS AND PROCEDURAL HISTORY

In March 1989, Mitchel Augustus Bowen pleaded guilty to a two-count criminal indictment charging him with false representation of United States citizenship in violation of 18 U.S.C. § 911 and possession of a firearm as a convicted felon in violation of 18 U.S.C. 922(g). After accepting Bowen's plea of guilty, the district court sentenced Bowen to a term of imprisonment and ordered, as a condition of supervised release, the surrender of Bowen to the Immigration and Naturalization Service (INS) for deportation proceedings. After Bowen served the sentence, INS began deportation proceedings. On April 15, 1993, INS returned Bowen to Jamaica, his native country. Bowen, however, reentered the United States approximately one year later. On October 11, 1994, INS agents received a "tip" that Bowen was living in a hotel in Marietta, Georgia. INS agents went to the hotel and arrested Bowen for unlawful reentry into the United States. Pursuant to a lawful search warrant, the agents seized approximately seven ounces of marijuana from a briefcase located underneath the bed.

On November 3, 1994, the government filed a two-count criminal information in the Northern District of Georgia charging Bowen in Count I with violation of 8 U.S.C. § 1326, alleging that he unlawfully reentered the United States after having been deported. Count II of the information charged Bowen with possession of marijuana in violation of 21 U.S.C. § 844. Bowen subsequently entered a negotiated plea of guilty to both counts. On January 24, 1995, the district court sentenced Bowen to

3

concurrent terms of fifteen months and twelve months imprisonment for illegal reentry and drug possession. As a condition of supervised release, the district court ordered the deportation of Bowen from the United States after completion of the term of imprisonment. Bowen objected to the district court's deportation order and requested the court to withhold its order to allow INS to determine whether he should be deported based on his claim of eligibility for asylum under the Immigration and Naturalization Act.

In the other case, a confidential informant informed INS that Henry Olushola Oboh manufactured fraudulent driver's licenses. On June 9, 1993, the confidential informant introduced an undercover INS agent to Oboh. During this meeting, the agent agreed to purchase two fraudulent driver's licenses from Oboh for $600. Oboh, equipped with a portable camera, driver's licenses, laminating machine, and a red drop cloth, took the picture of the undercover agent and created two North Carolina licenses. A short time later, law enforcement agents arrested Oboh.

On September 17, 1993, Oboh pleaded guilty to two counts of producing false identification documents in violation of 18 U.S.C. § 1028(a)(1) in the Northern District of Georgia. On January 28, 1994, the district court sentenced Oboh to concurrent terms of eight months imprisonment for each count. As a condition of supervised release, the district court ordered that the government deport Oboh from the United States pursuant to 18 U.S.C. § 3583(d), that the government deliver Oboh to the duly

authorized immigration official for such deportation, and that Oboh remain in the custody of the Immigration and Naturalization Service until deported.  Oboh timely objected to the district court's order of deportation arguing that the PSI did not include a recommendation for deportation or any information regarding Oboh's immigration status.  With respect to Oboh's immigration status, the presentence report (PSI) revealed that Oboh was born in Ibadan, Nigeria, on December 2, l952, and entered the United States in l974.

Oboh and Bowen filed separate appeals challenging the district court's authority to deport as a condition of supervised release under l8 U.S.C. § 3583(d).  Oboh also challenges the district court's determination that he was subject to deportation.  This court on its own motion consolidated these cases for the purpose of this appeal.

## DISCUSSION

In Chukwura, a panel of this court addressed for the first time in this circuit the question of whether section 3583(d) authorizes a district court to order the deportation of a defendant "subject to deportation" as a condition of supervised release.  Chukwura, 5 F.3d at 1420.  After reviewing the plain language of section 3583(d), the Chukwura panel concluded that Congress intended to grant district courts the authority to deport defendants "subject to deportation" as a condition of supervised release.  Chukwura, 5 F.3d at l423.  Before the panel, the government argued that the plain language of the statute

5

should be followed.  Now, appellants, Oboh and Bowen, and the government contend on appeal that <u>Chukwura</u> was wrongly decided and urge this <u>en</u> <u>banc</u> court to overrule <u>Chukwura</u>.  Recognizing that only this court sitting <u>en</u> <u>banc</u> or a Supreme Court decision can overrule a prior decision of this circuit, we agreed to address this issue.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (<u>en</u> <u>banc</u>).

We begin our analysis as the panel did in <u>Chukwura</u> and examine the plain language of section 3583(d).  Section 3583(d) provides in pertinent part:  "If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation."  18 U.S.C. § 3583(d) (1988).  We find this language clear and unequivocal.  The language states that a sentencing court may require that a defendant "subject to deportation" be deported as a condition of supervised release and order the surrender of the defendant to INS for such deportation.  This court "must presume that a legislature says in a statute what it means and means in a statute what it says there."  <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last: `judicial inquiry is complete.'"  <u>Germain</u>, 503 U.S. at 254 (quoting <u>Rubin v. United States</u>, 449 U.S. 424, 430 (1981)); <u>see</u> <u>also</u> <u>United States v. McLymont</u>, 45 F.3d 400, 401 (11th Cir.) (the plain

6

meaning of a statute controls unless the language of the statute is ambiguous or would lead to an absurd result), <u>cert. denied</u>, 115 S. Ct. 1723 (1995); <u>Williams v. NEC Corp.</u>, 931 F.2d 1493, 1498 (11th Cir. 1991) (same). Despite the plain language of this statute, appellants and the government now argue to the <u>en banc</u> court that Congress did not intend to grant district courts authority to deport because the plain meaning of section 3583(d) would in effect deny defendants the opportunity to challenge a deportation order under the administrative procedures of the Immigration and Naturalization Act. 8 U.S.C. §§ 1101-1557 (1994). In support of their argument, they note that other circuits addressing this issue have held that section 3583(d) merely authorizes the district court to order the surrender of a defendant to INS for deportation proceedings in accordance with the Immigration and Naturalization Act. The First, Fourth, and Fifth Circuits have each accepted arguments similar to the arguments appellants and the government make in this case. Consequently, we turn our attention to the decisions in those circuits.

The First Circuit in <u>United States v. Sanchez</u> was the first to address the issue of whether section 3583(d) authorized district courts to order deportation as a condition of supervised release. <u>Sanchez</u>, 923 F.2d 236. In <u>Sanchez</u>, the district court ordered the defendant upon his release from confinement to "`be deported in accordance with 18 U.S.C. [§] 3583(d).'" <u>Sanchez</u>, 923 F.2d at 237. On appeal, the defendant argued that the

7

district court entered an invalid order because a reasonable person could interpret the order to mean that the government could deport him without a INS deportation hearing. The First Circuit agreed. Finding "no indication of a contrary legislative design," the Sanchez court read section 3583(d) in conjunction with the provisions of the Immigration and Naturalization Act.[1] Sanchez, 923 F.2d at 237.

The Fifth Circuit also addressed this issue in United States v. Quaye and held that courts lacked authority to order deportation under section 3583(d). Quaye, 57 F.3d 447. In explaining its holding, the Quaye court noted that Congress had not granted the Judicial Branch authority to deport at anytime prior to the enactment of section 3583(d). Quaye, 57 F.3d at 449-50. The court also reasoned that the history of the predecessor of section 3583(d), along with prior absence of congressional authority for judicial deportation, supported the conclusion that Congress never intended to alter the traditional allocation of "deportation" power between the Executive and

---

[1] The Sanchez court amended the district court's order to state:

As a condition of supervised release upon the completion of his term of imprisonment the defendant is to be surrendered to a duly authorized immigration official for deportation in accordance with the established procedures provided by the Immigration and Naturalization Act, 8 U.S.C. §§ ll0l et seq. As further condition of supervised release if ordered deported defendant shall remain outside the United States.

Sanchez, 923 F.2d at 237.

8

Judicial Branches of government.[2]  The <u>Quaye</u> court noted that

section 3583(d)'s predecessor, enacted in 1931,

> permitted deportation of an alien prisoner in spite of
> the then-current parole rule that demanded that a
> prisoner remain within the court jurisdiction.  Far
> from empowering the Parole Board to usurp the Executive
> Branch's deportation power, the 1931 Act only provided
> a means by which an alien could be deported upon
> parole.

<u>Quaye</u>, 57 F.3d at 450.[3]  Based on the similarity of the language

in the 1931 Act and section 3583(d), the <u>Quaye</u> court found that

section 3583(d) codified the 1931 Act.  <u>Quaye</u>, 57 F.3d at 450.

Consequently, it concluded that section 3583(d) only "paves the

way for Executive [B]ranch deportation proceedings" and "does not

---

[2]  Specifically, the <u>Quaye</u> court stated:

> We insist on greater clarity of purpose when a
> statute would be read to upset a status quo long in
> place.  Indeed, here, the history of the statute is a
> powerful argument that Congress never intended to alter
> this traditional allocation of power between the
> Article II and Article III branches of government.

<u>Quaye</u>, 57 F.3d at 450.

[3] The 1931 Act, the predecessor to section 3583(d), provides
in pertinent part:

> where a Federal prisoner is an alien and subject to
> deportation the [B]oard of [P]arole may authorize the
> release of such prisoner after he shall have become
> eligible for parole on [the] condition that he be
> deported and remain outside of the United States and
> all places subject to its jurisdiction, and upon such
> parole becoming effective said prisoner shall be
> delivered to duly authorized immigration official for
> deportation.

<u>Quaye</u>, 57 F.3d at 450 (quoting Law of March 2, 1931, ch. 371, 46
Stat. 1469).

permit courts to order deportation alone." Quaye, 57 F.3d at 450.

Even more recently, the Fourth Circuit in United States v. Xiang interpreted the meaning of section 3583(d) "in the context of the overall scheme for the deportation of aliens" and held that district courts lack authority to order deportation as a condition of supervised release. Xiang, 77 F.3d at 772. In explaining its holding, the court in Xiang also found that its interpretation of section 3583(d) adhered to the "division of responsibility that Congress created between the INS and the court." Xiang, 77 F.3d at 773.

Like other courts that have addressed this issue, we believe it is instructive to look at the allocation of the power between the Executive and Judicial Branches with respect to deportation in determining whether Congress intended to grant courts authority to deport when it enacted section 3583(d). The First, Fourth, and Fifth Circuits' analysis, however, fails to recognize important congressional action that occurred before and after the enactment of section 3583(d). As previously noted, the Executive Branch, prior to the enactment of section 3583(d), had exclusive authority to order the deportation of a convicted alien "subject to deportation."[4] The Executive Branch's authority to deport,

_____

[4] Article I, Section 8, Clause 3 of the Constitution grants Congress exclusive authority to formulate the United States immigration policy. Congress enacted its first law dealing with deportation in l798 with the passage of the Alien Act of June 25, l798. Frank L. Auerbach, Immigration Laws of the United States l (Bobbs-Merrill Co., Inc. l955). The l798 Act authorized the President to deport aliens who he "deemed dangerous" to the

10

however, was not unlimited.  The Judicial Branch, for over seventy-five years, possessed the power to thwart INS's ability to deport when the grounds for deportation involved a single conviction of a crime of moral turpitude which resulted in a sentence exceeding one year or where the alien subject to deportation committed two unrelated crimes of moral turpitude. See United States v. Sanchez-Guzman, 744 F. Supp. 997, 999 n.5 (E.D. Wash. l990).  Under such circumstances, a district court could issue a judicial recommendation against deportation (JRAD) to INS to prevent INS from finding an alien deportable or excludable on the basis of that conviction.[5]   A JRAD once

United States.  Auerbach, at 2.  This Act expired in l800.  From l798 to the enactment of section 3583(d) in l987, the Executive Branch retained exclusive authority to order the deportation of aliens.

[5] In l940, for example, 8 U.S.C. § l55 provided in pertinent part:

> The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall deportation be made or directed if the court, or a judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the state, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this subchapter.

United States ex rel. Santarelli v. Hughes, l16 F.2d 613, 616 n.l5 (3d Cir. 1940) (quoting 8 U.S.C.A. § l55).  INS at that time was under the direction of the Labor Department.  On June 14, 1940, Congress transferred all functions and powers relating to immigration and nationality law to the Department of Justice. Auerbach, at 21.  Title 8 U.S.C. § l25l subsequently replaced section l55 and limited the application of JRADs to crimes of moral turpitude not involving narcotic offenses.  See 8 U.S.C. §§ 1251(a)(1), (b)(2).

properly entered with respect to a conviction absolutely barred INS from using that conviction as a basis for deportation. United States v. Bodre, 948 F.2d 28, 30 (1st Cir. 1991). In fact, even appellate courts lacked authority to reverse the district court's grant of JRAD. Bodre, 948 F.2d at 34.

On November 29, 1990, the Immigration Act of 1990, section 505(a), however, abolished the sentencing judge's power to issue JRADs. See Immigration Act of 1990, Pub. L. No. 101-649, § 505(a). Three years prior to the abolishment of JRADs Congress enacted section 3583(d).[6] The plain meaning of section 3583(d) taken together with the abolishment of JRADs, a longstanding mainstay in the criminal process, not only persuades us that Congress intended to enable district courts to order the deportation of defendants "subject to deportation," but in fact favors such deportation when either the Executive or Judicial Branch deems it appropriate.

In further support of our conclusion, we note that since our holding in Chukwura Congress has amended the Immigration and Naturalization Act to give district courts the power to order the deportation of alien defendants upon the request of the United States Attorney with concurrence of the Commissioner of INS.[7]

---

[6] Section 3583(d) became effective on November 1, 1987.

[7] The district court, however, does not have to grant the government's motion. See 8 U.S.C. § 1252a(d)(1) (providing for judicial deportation "if the court chooses to exercise such jurisdiction"). Upon the denial of the United States Attorney's request, the government may appeal the district court's decision as well as seek deportation through INS's administrative proceedings. See 8 U.S.C. § 1252a(d)(3), (4).

See 8 U.S.C. § l252a(d) (l994).  As a result of section l252a(d), the Executive Branch can now effectuate the deportation of a defendant "subject to deportation" through a judicial rather than an administrative proceeding if the government meets certain procedural requirements.  See 8 U.S.C. § 1252a(d)(2) (1994).

In response to our holding today, appellants and the government argue that giving effect to the plain meaning of section 3583(d) renders the Immigration and Naturalization Act's procedural requirements meaningless, asserting that section 3583(d) authorizes judicial deportation without procedural safeguards.  We reject this argument noting that procedural safeguards already exist in the sentencing process through appellate review of the conviction and the sentence.  Although we acknowledge that procedural safeguards exist in the sentencing process, we do not contend that these safeguards afford defendants recourse from deportation equal to that available under the Immigration and Naturalization Act.  This matter, however, is for Congress and not this court to decide.  As Justice Frankfurter stated in Harisiades v. Shaughnessy:

> The conditions of entry of every alien, the particular
> classes of aliens that shall be denied entry
> altogether, basis for determining such classification,
> the right to terminate hospitality to aliens, the
> grounds on which such determination shall be based,
> have been recognized as matters solely for the
> responsibility of the Congress and wholly outside the
> power of this Court to control.

Shaughnessy, 342 U.S. 580, 596-97 (l952) (Frankfurter, J., concurring).  For this reason, we interpret section 3583(d) in accordance with its plain language and reaffirm Chukwura's

13

holding that section 3583(d) authorizes district courts to deport defendants "subject to deportation" as a condition of supervised release. In reaching this holding, we emphasize that deportation under this provision is a condition of supervised release and not a sentence. We also note that defendants "subject to deportation" have no constitutional or statutory right to remain in this country. Shaughnessy, 342 U.S. at 586-87. Their "status within the country . . . is [merely] a matter of permission and tolerance." Shaughnessy, 342 U.S. at 586-87.

In this appeal, Oboh also argues that the district court failed to give him notice and an opportunity to present evidence or argument that he is not "subject to deportation."[8] At the sentencing hearing, the government presented an INS document revealing that Oboh entered the United States unlawfully. Although, Oboh objected to the introduction of this document because the government did not give him notice of the document prior to the hearing, Oboh did not argue that he legally entered this country. Moreover, Oboh does not argue that the district court erred in finding that he unlawfully entered the United States. We therefore summarily reject Oboh's argument that the district court's order of deportation denied him due process. The plain language of section 3583(d) gave Oboh sufficient notice that the district court could deport him as a condition of

---

[8] Bowen does not challenge the fact that he is "subject to deportation" or that he failed to receive adequate notice or an opportunity to be heard as to his eligibility for relief under the Immigration and Naturalization Act.

14

supervised release upon a finding that he was "subject to deportation."  Accordingly, we affirm the district court's decisions ordering the deportation of Oboh and Bowen as conditions of supervised release.

**AFFIRMED**