UNITED STATES of America,
Plaintiff–Appellee,

v.

Ali Reza JALILIAN,
Defendant–Appellant.

No. 88–2606.

United States Court of Appeals,
Tenth Circuit.

Feb. 13, 1990.

Susan M. Otto, Asst. Federal Public Defender, W.D. Oklahoma, Oklahoma City, Okl., for defendant-appellant.

John E. Green (Robert E. Mydans, Interim U.S. Atty., with him on the brief), First Asst. U.S. Atty., W.D. Oklahoma, Oklahoma City, Okl., for plaintiff-appellee.

Before TACHA, GARTH*, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

Ali Reza Jalilian appeals from the order of the district court requiring him to leave the country as a condition of his probation. Jalilian contends that the district court exceeded its authority and abused its discretion. We reverse.

I.

In May 1983, Jalilian was living in Norman, Oklahoma with his uncle, Yadollah Kavakebi. Kavakebi received an income tax refund check in the mail. Jalilian took the check, signed his uncle's name, and kept the money. Jalilian was subsequently indicted on March 8, 1988 on charges of forgery of an endorsement and uttering a forged check, in violation of 18 U.S.C. section 495. These charges were later reduced, and Jalilian pleaded guilty to a charge of converting a treasury check to his own use, in violation of 18 U.S.C. section 641. At the time he pleaded guilty, Jalilian was not legally authorized to be in the United States.

Jalilian was sentenced on August 15, 1988. The district court suspended the sentence and placed Jalilian on probation for two years with the special condition that "defendant is to return to his native country within 45 days and shall not return to the United States until legally authorized to do so." Within ten days of sentencing,

---

* The Honorable Leonard I. Garth, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Jalilian filed a motion to correct the sentence by striking the special condition. The government did not object. The district court amended its order, dropping the requirement that Jalilian "return to his native country," but still requiring him to leave the country within forty-five days. The district court reasoned that permitting an illegal alien to remain in the country constituted a continuing violation of federal law.

## II.

The issue presented on appeal is whether the district court exceeded its authority or abused its discretion by imposing a probation condition ordering Jalilian to leave the country and prohibiting him from reentering unless he obtained proper legal authorization. We review the legality of a sentence de novo. *United States v. Duncan*, 870 F.2d 1532, 1535 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989). If the sentence is legal, we review probation determinations for abuse of discretion. *See United States v. Jack*, 868 F.2d 1186, 1188 (10th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3171, 104 L.Ed.2d 1032 (1989). Although Jalilian challenged the constitutional power of a federal court to require him to leave the country, we will not reach the constitutional issue if there is some other ground upon which the case may be disposed. *See United States v. Campos–Serrano*, 404 U.S. 293, 295 n. 3, 92 S.Ct. 471, 473 n. 3, 30 L.Ed.2d 457 (1971).

## A.

The sentencing court ordered Jalilian to leave the country pursuant to 18 U.S.C. section 3563, which allows the court to impose conditions of probation that are reasonably related to the purposes of sentencing contained in 18 U.S.C. section 3553. Jalilian contends that the order was a de facto deportation order that exceeds the authority granted by section 3563. We agree.

The Supreme Court has repeatedly emphasized that

"over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. Our cases "have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."

*Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (citations omitted) (quoting respectively *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953)). Congress, in turn, has delegated exclusive authority to the Attorney General to order the deportation of aliens pursuant to 8 U.S.C. section 1252, which expressly provides:

A special inquiry officer shall conduct proceedings under this section to determine the deportability of *any alien*, and ... as authorized by the Attorney General, shall make determinations, including orders of deportation.... *In any case in which an alien is ordered deported from the United States under the provisions of this chapter, or of any other law or treaty, the decision of the Attorney General shall be final.*

8 U.S.C. § 1252(b) (emphasis added). The clear import of this language is that the Attorney General's authority extends to the deportation of any alien under the laws or treaties of the United States. A court's sua sponte order deporting an alien outside of the appropriate immigration context is inconsistent with this statutory scheme. A district court may, of course, recommend to the Attorney General that an alien convicted of a crime of moral turpitude *not* be deported. 8 U.S.C. § 1251(b). No statute provides, however, that a district court may recommend or, as it did here, direct that an alien be deported. Such an order raises difficult questions about possible conflicts between judicial independence and the Attorney General's final authority under section 1252. The possibility of such conflict suggests that the probation statute, 18

U.S.C. § 3563, should not be read to authorize de facto deportation orders. As the Third Circuit noted in a similar context,

> [a] condition of probation may not circumvent another statutory scheme. Whether and how to initiate deportation procedures is exclusively the province of the Attorney General, through the Immigration and Naturalization Service.

*United States v. Abushaar,* 761 F.2d 954, 960–61 (3d Cir.1985) (citations and footnote omitted).

This result accords with the determinations of other circuits. The Ninth Circuit, in *United States v. Castillo–Burgos,* 501 F.2d 217 (9th Cir.), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284 (1974), reversed a district court order permanently deporting a defendant. The court reasoned:

> Congress has enacted laws governing the admission, expulsion, and deportation of aliens, 8 U.S.C. §§ 1181–1255. Those laws delegate authority to order deportation to the Attorney General and not to the judiciary. 8 U.S.C. §§ 1251–1255. Nowhere in this detailed statutory scheme is there a provision for a court to deport aliens sua sponte.

*Id.* at 219–20. The Second Circuit reached a similar conclusion in *United States v. Hernandez,* 588 F.2d 346 (2d Cir.1978), where the court held that "the district court exceeded its authority by the imposition of the conditions with reference to departure from and reentry into the United States...." *Id.* at 352. We find this interpretation of Congress' statutory scheme persuasive. Given the nearly plenary authority of Congress in this area, the comprehensive scheme for admission and deportation of aliens in 8 U.S.C. sections 1101–1362, and the clear delegation of primary jurisdiction to the Attorney General in section 1252, we hold that the district court exceeded its statutory authority under 18 U.S.C. section 3563 by ordering Jalilian to leave the country.[1]

### B.

One final matter remains for our consideration. The district court's order also prohibited Jalilian from reentering "the United States until legally authorized to do so." Although it is unclear whether Jalilian contests this provision, we determine that the provision does not exceed the district court's authority. Such a condition does not interfere with the Attorney General's exclusive power over the admission, exclusion, and deportation of aliens. If Jalilian were to be deported or leave the country voluntarily, he is still free to apply for permission to reenter, and to return if he receives it. The determination of whether to deport and whether to permit reentry should Jalilian be deported or leave voluntarily, however, would remain in the hands of the Attorney General, where Congress determined the decision should lie, and not in the judiciary. We thus hold that a probation condition forbidding the probationer from reentering the United States without proper legal authorization does not exceed the district court's authority, and we agree with the First, Ninth, and Fifth Circuits that such a condition is not a per se abuse of discretion, *see United States v. Mercedes–Mercedes,* 851 F.2d 529, 530–31 (1st Cir.1988); *United States v. McLeod,* 608 F.2d 1076, 1078 (5th Cir.1979) (per curiam); *Castillo–Burgos,* 501 F.2d at 220.

### III.

The district court exceeded its authority under the probation statute when it ordered Jalilian to leave the country. The district court did not err, however, by requiring Jalilian to reenter the country only with the approval of appropriate authorities. We thus REVERSE and REMAND for resentencing in accordance with this opinion.

---

**1.** We do not reach the question of whether a district court may approve an agreement by a defendant to leave the country voluntarily in exchange for a reduced or suspended sentence, as occurred in *United States v. Janko,* 865 F.2d 1246, 1247 (11th Cir.1989) (per curiam).