921 P.2d 1285

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Rogelio PANDO, Defendant–Appellant.**

**No. 15868.**

Court of Appeals of New Mexico.

July 15, 1996.

Tom Udall, Attorney General, Jennifer L. Stone, Asst. Attorney General, Santa Fe, for Appellee.

T. Glenn Ellington, Chief Public Defender, David Henderson, Asst. Appellate Defender, Santa Fe, for Appellant.

## OPINION

PICKARD, Judge.

1. Defendant was convicted after pleading guilty to two counts of unlawful branding in violation of NMSA 1978, Section 30–18–3(C) (Repl.Pamp.1994), a fourth-degree felony. The trial court sentenced Defendant to two concurrent eighteen-month terms of imprisonment, then suspended the sentence and placed him on unsupervised probation on the condition that Defendant not remain in the United States. Defendant appeals from the sentence entered for those convictions.

2. Defendant raises two issues on appeal: (1) that the trial court exceeded its authority when it required Defendant, as a condition of probation, to leave and remain outside of the United States, and (2) that the probation condition was illegal and severable from the remainder of Defendant's sentence. We agree and sever the illegal portion of Defendant's sentence.

## DISCUSSION

### Banishment and Deportation

3. The challenged portion of Defendant's sentence reads: "The sentence is suspended and the [D]efendant is placed on unsupervised probation on the condition that he not remain in the United States." Defendant first argues that this sentence constitutes banishment and is illegal. We agree, and hold that ordering Defendant to leave the United States and to remain outside the country as a condition of his probation was an illegal banishment.

4. New Mexico law prohibits banishment. In *State v. Charlton*, 115 N.M. 35, 846 P.2d 341 (Ct.App.1992), *cert. denied*, 114 N.M. 577, 844 P.2d 827 (1993), the trial court suspended all but one year of the defendant's prison sentence and ordered that the defendant, upon completion of the one year, leave New Mexico and not return without prior permission of the court. This Court held that the sentence was a banishment and therefore illegal because banishment is unauthorized by the legislature and is contrary to public policy. *Id.* at 37, 846 P.2d at 343.

5. Courts across the country have held that banishment has "no rehabilitative role in modern penology." *Id.* at 38, 846 P.2d at 344; *see State ex rel. Halverson v. Young*, 278 Minn. 381, 154 N.W.2d 699, 702 (1967); *Johnson v. State*, 672 S.W.2d 621, 623 (Tex. Ct.App.1984). The Third Circuit Court of Appeals noted that "the harshness of banishment or exile is reflected in the fate of Adam and Eve, or Socrates' choice to drink the hemlock rather than leave Athens. Some scholars speculate that, in primitive societies, banishment was tantamount to death." *United States v. Abushaar*, 761 F.2d 954, 959 (3d Cir.1985) (citations omitted), *cert. denied*, 479 U.S. 951, 107 S.Ct. 439, 93 L.Ed.2d 388 (1986). One of the first cases to consider the question of banishment was *People v. Baum*, 251 Mich. 187, 231 N.W. 95 (1930). In *Baum*, the Supreme Court of Michigan held that our federal system of government precluded states from dumping its criminals into other states, as doing so would "tend to incite dissention, provoke retaliation, and disturb that fundamental equality of political rights among the several states which is the basis of the Union itself." *Id.* 231 N.W.2d at 96. *See also Rutherford v. Blankenship*, 468 F.Supp. 1357, 1360 (W.D.Va.1979).

6. Similar policy considerations are present when the situation involves a state dumping its criminals into a neighboring country. As Mr. Justice Miller observed in 1875 regarding a California statute burdening immigration, "If [the United States] should get into a difficulty which would lead to war, or to suspension of intercourse, would California

alone suffer, or all the Union?" *Chy Lung v. Freeman,* 92 U.S. 275, 279, 23 L.Ed. 550 (1875). If a state is allowed to engage in actions which affect our country's foreign relations, "a single State can, at her pleasure, embroil us in disastrous quarrels with other nations." *Id.* 92 U.S. at 280.

■ 7. This brings us to Defendant's second contention of illegality, which is that the portion of his sentence conditioning probation on Defendant's leaving and remaining outside the United States was a de facto deportation in violation of federal law. The Supreme Court "has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (citation omitted). Congress has delegated to the United States Attorney General the exclusive authority to order the deportation of immigrants pursuant to 8 U.S.C. § 1252, which provides (in relevant part):

> A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, ... and, as authorized by the Attorney General, shall make determinations, including orders of deportation.... In any case in which an alien is ordered deported from the United States under the provisions of this chapter, or of any other law or treaty, the decision of the Attorney General shall be final.

8 U.S.C. § 1252(b) (1994). "A court's sua sponte order deporting an alien outside of the appropriate immigration context is inconsistent with this statutory scheme.... Such an order raises difficult questions about possible conflicts between judicial independence and the Attorney General's final authority under section 1252." *United States v. Jalilian,* 896 F.2d 447, 448 (10th Cir.1990); *see United States v. Castillo–Burgos,* 501 F.2d 217, 219–20 (9th Cir.), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284 (1974), *overruled on other grounds by United States v. Rubio–Villareal,* 967 F.2d 294, 300 (1992);

*United States v. Hernandez,* 588 F.2d 346, 351–52 (2d Cir.1978). In *Abushaar,* the Third Circuit Court of Appeals held that "[a] condition of probation may not circumvent another statutory scheme. Whether and how to initiate deportation procedures is exclusively the province of the Attorney General, through the Immigration and Naturalization Service." 761 F.2d at 960–61 (citations and footnote omitted).

■ 8. The regulation of immigration "is unquestionably exclusively a federal power," *De Canas v. Bica,* 424 U.S. 351, 354, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976), and state courts may not intrude on that authority. *Hines v. Davidowitz,* 312 U.S. 52, 62–63, 61 S.Ct. 399, 401–02, 85 L.Ed. 581 (1941); *State v. Camargo,* 112 Ariz. 50, 52, 537 P.2d 920, 922 (1975) (en banc); *Hernandez v. State,* 613 S.W.2d 287, 290 (Tex.Crim.App.1980) (the Supremacy Clause of the United States Constitution dictates that federal immigration law, not a trial court's decision, governs an immigrant's right to remain in or to reenter the United States). The trial court's sentence not only forces Defendant to leave the country, but requires that he remain outside the United States during the period of his probation. The Arizona Supreme Court held in *Camargo* that "[a] state trial judge cannot ... make a decision that controls the entry of an alien into the United States. Such control is exclusive to the United States and without the jurisdiction of a state court." 112 Ariz. at 52, 537 P.2d at 922.

■ 9. Nor can a state trial court make determinations of deportability. Congress has created an elaborate procedural scheme for the Attorney General to make those determinations. That scheme is summarized in 8 U.S.C. Section 1252(b), followed by the unambiguous statement that "the procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section." *Id.* Thus, the trial court was unauthorized to deport Defendant or to make findings as to Defendant's deportability for the purpose of requiring him to leave the country, and it im-

permissibly exceeded its authority in finding Defendant deportable and in conditioning Defendant's probation on his leaving and remaining outside the United States.

10. The State maintains that this analysis applies only if Defendant is, as he claims, a legal resident, and that Defendant may only challenge his sentence if he is legally present in the United States. The State requests that this case be remanded for a determination of Defendant's immigration status before deciding this appeal on the merits.

11. This argument lacks merit for two reasons. First, Defendant's immigration status has no relevance to the trial court's lack of authority to order de facto deportations. In *Jalilian,* the Tenth Circuit Court of Appeals reversed a district court's order banishing an immigrant defendant from the country despite the fact that the defendant was not legally authorized to be in the United States. 896 F.2d at 447–48. Second, a determination of Defendant's immigration status would necessarily include an analysis of his potential deportability and, as we discussed above, a state trial court has no authority to make determinations of deportability. 8 U.S.C. § 1252(b); *Hines,* 312 U.S. at 62–63, 61 S.Ct. at 401–02; *Camargo,* 112 Ariz. at 52, 537 P.2d at 922; *Hernandez,* 613 S.W.2d at 290.

12. The State cites *Jalilian* for the proposition that a trial court may order an immigrant defendant who is deported to comply with federal immigration laws and not to re-enter the United States without proper legal authorization from the Immigration and Naturalization Service (INS). 896 F.2d at 449. The State urges us to interpret the trial court's sentence as a proper *Jalilian* order that Defendant, if deported by proper immigration authorities, comply with federal immigration laws and not re-enter the United States until legally permitted by the INS to do so. Had this been Defendant's sentence, the probation condition would be legal. However, we will not interpret Defendant's sentence to say something it does not. In its brief, the State acknowledges that Defendant's sentence was suspended and he was

placed on probation "on the express condition that Mr. Pando remain outside the United States for the term of the sentence." The sentence is facially unambiguous that Defendant's probation is conditioned on his remaining outside the United States and does not provide for Defendant's re-entry during the probation period even if given authorization by the immigration authorities. We will not substitute an artificial and inaccurate interpretation for the plain and clear meaning of an unambiguous sentence.

*Severability*

■ 13. Defendant's second issue on appeal is that the illegal condition of his probation is void and may be severed from the remainder of his sentence. Neither party contends that the portions of the sentence ordering eighteen months imprisonment, suspending the prison terms, and ordering unsupervised probation on the standard terms and conditions are not legal and do not constitute a valid sentence for Defendant's convictions. However, while Defendant argues that the illegal condition of probation, that he remain outside the United States, is severable from the remainder of the sentence, the State maintains that the condition is inseparable, and therefore inseverable, from the legal sentence.

■ 14. A sentence or portion thereof that is unauthorized by law is null and void. *Sneed v. Cox,* 74 N.M. 659, 661, 397 P.2d 308, 309 (1964); *State v. Peters,* 69 N.M. 302, 304, 366 P.2d 148, 149 (1961), *cert. denied,* 369 U.S. 831, 82 S.Ct. 849, 7 L.Ed.2d 796 (1962); *Ex parte Cica,* 18 N.M. 452, 459, 137 P. 598, 600 (1913); *State v. Holland,* 91 N.M. 386, 387, 574 P.2d 605, 606 (Ct.App.1978). When a trial court imposes one valid and one invalid sentence, or when it imposes a sentence a portion of which is illegal, the appellate court will sever the illegal portion or sentence if possible in order to give effect to the legal and valid sentence. *Sneed,* 74 N.M. at 661, 397 P.2d at 309–10; *Jordan v. Swope,* 36 N.M. 84, 86–87, 8 P.2d 788, 789 (1932); *State v. Hovey,* 87 N.M. 398, 399, 534 P.2d 777, 778 (Ct.App.1975).

15. In *State v. Charlton,* this Court invalidated the illegal banishment part of the order, and it held that doing so did not invalidate all of the original sentence. The banishment portion was severable from the rest of the sentence. 115 N.M. at 38, 846 P.2d at 344.

16. The State distinguishes *Charlton* by the fact that the trial court's banishment of the defendant was not an express condition of the original suspended sentence, while in this case the banishment was an express condition of Defendant's probation. This distinction ignores the trial court's structure of the sentence in *Charlton,* as well as this Court's statement that "[w]hen the trial court orders a defendant to leave a broad geographical region, often characterized as banishment, appellate courts have routinely invalidated *this condition.* " 115 N.M. at 38, 846 P.2d at 344 (emphasis added).

17. Moreover, in *Holland* this Court held that sentences or portions thereof which are unauthorized by law are void, and that "[t]hese rules apply to probation and conditions of probation." 91 N.M. at 387, 574 P.2d at 606. Courts in other jurisdictions have held similarly. For example, in *People v. Harris,* 238 Ill.App.3d 575, 179 Ill.Dec. 560, 606 N.E.2d 392 (1992), an Illinois appellate court held that an illegal banishment condition of the defendant's probation did not void the entire probation sentence in order to require resentencing. The Court reasoned that a defendant may be subjected to a harsher penalty upon resentencing, and that this would violate Illinois law as well as the United States Constitution. *Id.* at 565, 606' N.E.2d at 397. *See People v. Blakeman,* 170 Cal.App.2d 596, 339 P.2d 202, 203 (1959) (banishment condition of probation was a void and separable part of the probation order); *Ex parte Scarborough,* 76 Cal.App.2d 648, 173 P.2d 825, 827 (1946) (the language in the judgment ordering banishment as a condition of probation is severable and will be disregarded); *Young,* 154 N.W.2d at 702 (banishment condition of probation was a void and separable part of the judgment); *People v. Green,* 114 Misc.2d 339, 451

N.Y.S.2d 970, 974 (Sup.Ct.1982) (banishment probation condition was invalid and clearly separable and severable from the rest of the obviously valid sentence); *Hernandez,* 613 S.W.2d at 290 (condition of probation that the defendant return to Mexico was invalid and revocation of probation for violation of the invalid condition was an abuse of discretion).

18. The State relies on *State v. Olguin,* 120 N.M. 740, 741, 906 P.2d 731, 732 (1995); *Swafford v. State,* 112 N.M. 3, 17 n. 11, 810 P.2d 1223, 1237 n. 11 (1991); *State v. Platt,* 114 N.M. 721, 725, 845 P.2d 815, 819 (Ct. App.), *cert. denied,* 114 N.M. 501, 841 P.2d 549 (1992); and *State v. Whitaker,* 110 N.M. 486, 488, 797 P.2d 275, 277 (Ct.App.), *cert. denied,* 109 N.M. 631, 788 P.2d 931 (1990), for its contention that the express condition may have been based on an improper consideration (i.e. Defendant's deportability) and thus would require that the case be remanded for resentencing. This argument ignores the fact that the trial courts in all of the cases we have cited based their illegal probation conditions on improper considerations and the conditions were, nonetheless, held to be severable. Moreover, the State's reliance on the above cases is misplaced in that none are analogous to the instant case.

19. In *Platt,* for example, the challenged portion of the defendant's sentence was a restitution order that miscalculated the amount of money the victims could recover. The State erroneously claims that, in *Platt,* this Court vacated the sentence and remanded for resentencing. In fact, we severed and reversed only the restitution portion of the sentence, remanding solely for a recalculation of the restitution amount. 114 N.M. at 725, 845 P.2d at 819.

20. In *Olguin, Swafford,* and *Whitaker,* the trial courts determined the sentences based on various factors, and in each case at least one of the factors was inappropriate. Because it was impossible for the reviewing court to separate and determine the relative weights the trial courts attached to each of the factors, remand for resentencing was necessary. *Olguin,* 120 N.M. at 741, 906

P.2d at 732; *Swafford,* 112 N.M. at 17 n. 11, 810 P.2d at 1237 n. 11; *Whitaker,* 110 N.M. at 494, 797 P.2d at 283.

*CONCLUSION*

21. We hold that the condition that Defendant leave and remain outside of the country was illegal and that the illegal probation condition may be severed from the sentence without invalidating the remainder of the sentence. Therefore, we remand this case to the trial court for entry of an amended sentence. The amended sentence shall delete the illegal condition, but it may require Defendant to sign a probation form containing the standard conditions, except that the probation shall be unsupervised. In all other respects, the sentence shall not be altered.

22. **IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.