Filed 11/18/15  P. v. Herrera CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061372 |
| v. | (Super.Ct.No. FWV1304092) |
| GUILLERMO ANTONIO HERRERA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed with directions.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, James H. Flaherty III, and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

1

After running out of a Macy's store with approximately $261.00 dollars worth of merchandise, a Macy's employee followed defendant Guillermo Herrera outside. Defendant threatened to kill the employee and put his hands on the employee's chest to block the employee from re-entering the store. Defendant was charged with criminal threats (Pen. Code, § 422),[1] misdemeanor battery (§ 242), and commercial burglary (§ 459, second degree), was tried by a jury, and convicted on all counts. Defendant was placed on formal probation and appealed.

On appeal, defendant argues (1) there is insufficient evidence to support the criminal threats conviction; (2) the court lacked power to impose a probation condition requiring that defendant not enter the United States without written authorization of the Department of Homeland Security under principles of pre-emption; and (3) the second degree burglary conviction should be reversed to misdemeanor shoplifting pursuant to Proposition 47. We direct the clerk of the court to amend the sentencing minutes, but otherwise affirm.

## BACKGROUND

At approximately 8:00 p.m. on December 11, 2013, in Macy's Department Store, defendant was observed to be walking around the men's department, apparently under the influence of alcohol. Defendant approached Ricardo Gonzalez, a visual security officer

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

at the store, and asked if Gonzalez would help him find a purple sweater, so Gonzalez referred the defendant to Randy Calderon, a recovery supervisor, for assistance.

Calderon, who also noticed defendant's inebriated state, walked around the store with defendant, showing defendant what Macy's had available. Calderon noted that defendant was holding several items of merchandise, including a purple top, a couple of pairs of pants, and a hat, which were all Macy's merchandise. After several minutes, defendant was unable to find what he wanted so Calderon returned to his other duties. Back at the folding table, Calderon heard people yelling, "He's running out," and looked up to see defendant running out the west door of the men's department.

Calderon went out and saw defendant running north through the parking lot, and pursued defendant. Approximately 100 yards from the store, Calderon caught up with defendant and asked defendant to return the merchandise. Defendant claimed the items belonged to him, so Calderon asked to see a receipt, but defendant did not have one. Calderon took all the items except the hat from defendant and headed back towards the store.

Defendant followed Calderon, rambling. He told Calderon he had purchased the items online and was picking them up at the store, so Calderon would get into trouble. However, Calderon was aware that when one buys merchandise online, one does not pick it up at the store. Calderon also indicated there was no evidence defendant had purchased the items inside the store because none of the items had a return label sticker which is normally placed on the price tag ticket when an item is purchased.

Defendant told Calderon he "could kick your ass any time I wanted to," which Calderon took as a threat because he was 51 years old and alone at the time. Defendant cut in front of Calderon, putting his hands on Calderon's chest to stop him. Defendant stated, "You've never served in the [s]ervice. . . . You've never even handled a rifle . . . to protect your country." Then defendant said if he had his MR 15[2] he would shoot Calderon's "fucking ass between the eyes." Calderon, only a foot away from defendant, who was yelling, took defendant seriously, and was afraid.

Inside the store, D'Adran Bryant, a visual security officer employed at Macy's, received calls from associates that Calderon was out in the parking lot "tussling" with someone who had done a "grab and run." As the two visual security officers approached the west entrance, they saw Calderon and defendant, but they were not touching. Defendant was cursing, incoherent, and uncooperative. Bryant contacted the store detective, Julie Westervoorde, to inform her that Recovery Supervisor Calderon had exited the store in pursuit of a shoplifter. The store manager Brenda Chavez was also contacted. When Westervoorde reached the west entrance, she saw Calderon holding the door open, while defendant was pushing him and yelling at him.

Bryant, along with Gonzalez, another visual security officer, went to the west door, where they saw Calderon with defendant, but not touching defendant. They went outside where they observed defendant being belligerent, using threats, and making

---

[2] At trial, Calderon was not sure if defendant mentioned an MR 15, a rifle, or an AR 15, an assault weapon. However, at one foot away, either weapon would be dangerous.

derogatory statements to store detective Westervoorde. Defendant told them that he had military training, he was willing to shoot them, he had shot people in Afghanistan where he was a sniper, and he had guns at his residence, which was nearby. However, Bryant, who had served in the military, asked routine questions about where defendant was stationed and the name of his superior officer, but defendant could not give satisfactory responses.

Defendant told Bryant and Gonzalez he would get a weapon and shoot them between the eyes, either when they came out of the office, house or store. Defendant also told Westervoorde to enjoy the next two days because they would be her last, that he had her name and number, and when she walked out of her house in two days, she would get a bullet between the eyes.

Brenda Chavez, the loss prevention manager, was eating dinner at an Applebee's restaurant just feet from the store when she received a call about the incident, which she could observe from the window of the restaurant, and went out. She tried to calm defendant down and asked him to return to the store to discuss what happened, but he was cursing, resisting and spitting. Defendant refused to accompany them back to the store, acting hostilely. Chavez instructed Bryant and Gonzalez to put defendant on the ground and handcuff him. Defendant continued trying to resist, flailing his arms, fighting, yelling and spitting, so Bryant and Gonzalez put him on the ground and handcuffed him. As he was being handcuffed, defendant yelled things like, "Get the fuck

5

off me. Give me my stuff back. Who the fuck do you think you are? I'm going to kick your fucking ass."

Defendant continued making threats, repeatedly telling Chavez he would kill her. He also referred to his military training, as well as his experience with firearms, and told her that in two days time he would put a bullet between her eyes. Chavez took defendant's threats seriously and later advised her team to be on the lookout for suspicious behavior. When Chavez interviewed Calderon about the incident, Calderon refused to enter the loss prevention office and asked to speak with her outside the office because he was visibly shaken up.

After defendant was escorted to the loss prevention office, the items taken by defendant were photographed and confirmed to be Macy's inventory. Two items were damaged by the forceful removal of the security sensor tags. None of the items had the customer return label that is normally affixed when a purchase is made. The total value of the items taken was $261.50. Defendant was taken into custody when a police officer arrived. Defendant was still upset, raising his voice and using profanity.

Defendant was charged with criminal threats against Calderon (§ 422, count 1), misdemeanor battery (§ 242, count 2), and commercial burglary. (§ 459, count 3.) Following a jury trial, defendant was convicted on all counts. At sentencing, defendant was placed on formal probation. One of the probation conditions prohibited defendant from remaining in or re-entering the United States without proper written authorization

6

from the Department of Homeland Security, Bureau of Citizenship and Immigration Services.  Defendant appealed.

## DISCUSSION

1.    *There is Substantial Evidence to Support the Criminal Threats Conviction.*[3]

Defendant argues there is insufficient evidence to support his conviction for making criminal threats in violation of section 422.  Specifically, he asserts the elements of immediacy and sustained fear on the part of the victim were not established.  We disagree.

   a.    *Standard of Review*

In reviewing a sufficiency of evidence claim, our role is limited; we determine whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Smith* (2005) 37 Cal.4th 733, 738-739; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonable deduce from the evidence.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Reversal is unwarranted unless it appears that upon no

---

[3] On page 15 of the brief, defendant includes sub-issue C, arguing that the guilty verdict on counts two and three based on insufficient evidence violates his due process rights because there was insufficient evidence to support the gang enhancements. However, because defendant was neither charged with nor found guilty of any gang related allegations or crimes, we assume this section was included from prior briefing, and do not address this issue.

hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1199.)

Substantial evidence must be of ponderable legal significance, reasonable in nature, credible and of solid value. (*People v. Concha* (2008) 160 Cal.App.4th 1441, 1451.) While we must ensure that the evidence is reasonable, credible and of solid value, it is the exclusive province of the judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*People v. Smith, supra,* 37 Cal.4th at p. 739.) The uncorroborated testimony of a single witness is sufficient to support a conviction unless it is physically impossible or inherently improbable. (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018.)

b.    *The Third and Fourth Elements of the Crime Were Established*

To prove a violation of section 422, the prosecution must prove (1) defendant willfully threatened to commit a crime which will result in death or great bodily injury to another person; (2) defendant made the threat with the specific intent that the statement would be taken as a threat, even if there is no intent of actually carrying it out; (3) the threat (either orally or in writing) was, on its face and under the circumstances, so unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat caused the person threatened to be in sustained fear for his own or her own safety or for his or her immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422; *People v. Culbert* (2013) 218 Cal.App.4th 184, 189-190.)

8

Section 422 was not enacted to punish emotional outbursts; it targets only those who try to instill fear in others.  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

(i)      *Immediacy*

Section 422 requires that the statement be "so unequivocal, unconditional, immediate, and specific as to convey . . . a gravity of purpose and an immediate prospect of execution of the threat[.]"  "'A threat is not insufficient simply because it does "not communicate a time or precise manner of execution[.]"  [Citation.]'  [Citation.]"  (*People v. Wilson, supra*, 186 Cal.App.4th at p. 806.)  However, section 422 does not require an immediate ability to carry out the threat.  (*People v. Smith* (2009) 178 Cal.App.4th 475, 480, citing *In re David L.* (1991) 234 Cal.App.3d 1655, 1660.)  The totality of the circumstances must be considered in addition to the words used.  (*People v. Smith, supra,* at p. 480.)

Threats often carry some aspect of conditionality.  (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538.)  Nevertheless, a seemingly conditional threat contingent on an act highly likely to occur may convey to the victim a gravity of purpose and immediate prospect of execution.  (*People v. Wilson, supra,* 186 Cal. App. 4th at pp. 806-807.)  Thus, the word "immediate" has been understood to mean "'that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met.'  [Citation.]"  (*Id.* at p. 807.)  This means "the third element's four enumerated statutory elements— unequivocality, unconditionality, immediacy and specificity—are '"simply factors to be

9

considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim." [Citation.]' [Citation.]" (*Ibid.*)

Here, while defendant suggested he would shoot Calderon in two days' time, the threat was sufficient to evoke sustained fear in a reasonable person where the future threat was combined with present threats: to shoot Calderon if he had his MR 15, and to kick Calderon in the ass any time he wanted to. Given defendant's volatility, the fact he (a twenty-something) physically tried to prevent Calderon (a 51 year old) from re-entering the store, and repeatedly threatened to kill him and to "kick his ass," as well as the fact Calderon had no way of knowing whether defendant had any firearms, military experience, or sniper training, defendant's statements of intended action were sufficiently immediate to constitute threats.

### (ii) *Sustained Fear*

Section 422 requires the person threatened "reasonably . . . be in sustained fear for his or her own safety[.]" Besides requiring a showing of defendant's mental state, the statute also requires proof of a mental element in the victim. (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) The element of sustained fear is satisfied where there is evidence that the victim's fear is more than fleeting, momentary or transitory. (*People v. Culbert, supra,* 218 Cal.App.4th at p. 190, citing *People v. Allen, supra,* 33 Cal.App.4th at p. 1156.) Fifteen minutes has been held to be more than sufficient to constitute "sustained" fear for purposes of section 422. (*People v. Wilson* (2015) 234 Cal.App.4th 193, 201.)

10

Here, Calderon was still visibly shaking after defendant had been escorted to the loss prevention office, when he asked to be interviewed outside the office rather inside the same room. There is substantial evidence he experienced sustained fear within the meaning of section 422.

2. *The Probation Condition Prohibiting Defendant from Entering the United States Without Proper Documentation Was Valid.*

Defendant challenges the validity of the probation condition prohibiting him from remaining in or re-entering the United States without written authorization from the Department of Homeland Security, Bureau of Citizenship and Immigration Services. Specifically, he argues that the trial court lacked authority to issue such a condition, as a matter of federal pre-emption. We disagree.

We agree that the power to regulate immigration is unquestionably exclusively a federal power. (*In re Y.M.* (2012) 207 Cal.App.4th 892, 908.) However, it does not follow that all state regulations touching on aliens are preempted. (*Id.* at p. 908 citing *Sturgeon v. Bratton* (2009) 174 Cal.App.4th 1407, 1422.) States and localities may assist in the enforcement of federal immigration policy. (*In re Jose C.* (2009) 45 Cal.4th 534, 540.) While a state court may not condition reentry into the United States upon the court's *own* written permission (*In re Adolfo M.* (1990) 225 Cal.App.3d 1225, 1233), it may require a defendant (or minor) to obtain permission from "pertinent legal authorities" (see *United States v. Mercedes-Mercedes* (1st Cir. 1988) 851 F.2d 529, 530-

11

531), or prohibit entering "the United States until legally authorized to do so." (See *United States v. Jalilian* (10th Cir. 1990) 896 F.2d 447, 449.)

In other words, a court may not order a defendant's deportation, *sua sponte*, without running afoul of the federal authority governing admission, expulsion, and deportation of aliens. (*United States v. Castillo-Burgos* (9th Cir. 1974) 501 F.2d 217, 219-220, disapproved on a different point in *United States v. Rubio-Villareal* (9th Cir., 1992) 967 F.2d. 294, 296, 300.) However, a lower court may impose a probation condition prohibiting a defendant from returning to the United States without proper papers. (*Id.* at p. 220.) In sentencing a defendant known not to be a United States citizen to prison, the trial court may additionally order the defendant not to return to the United States illegally if the defendant is deported. (*People v. Laufasa* (2010) 188 Cal.App.4th 436, 439.)

The probation condition here prohibited defendant from re-entering the United States without proper written authority, which has been held to be a valid condition of probation under the authorities analyzed here. It did not order defendant's deportation, so it did not tread on a field preempted by federal law.

3.     *Defendant Must File a Petition Pursuant to Section 1170.18 to Seek Proposition 47 Relief.*

Defendant argues that the conviction on count 3, for commercial burglary, must be modified by substituting a conviction for shoplifting in violation of section 459.5,

12

pursuant to Proposition 47. He argues that Proposition 47 applies retroactively because his appeal was pending on the effective date of the statue. We disagree.

Defendant was charged in 2013 with commercial (second degree) burglary, pursuant to section 459. That crime was a wobbler, punishable by imprisonment in the county jail not exceeding one year or in the state prison. (§ 461, subd. (b).) Defendant was charged with a felony violation of section 459. He appealed on June 17, 2014, before Prop. 47 passed. There is no indication that defendant has petitioned the superior court for recall of his sentence. A wobbler is deemed a felony unless and until it is subsequently reduced to a misdemeanor by the sentencing court pursuant to section 17, subdivision (b). (*People v. Feyrer* (2010) 48 Cal.4th 426, 438-439.)

The Legislature enacted section 459.5, which became operative on November 5, 2014, after the electorate approved Proposition 47 at the November 4, 2014 election. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.) Proposition 47 made certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by ineligible defendant. (*Rivera, supra,* 233 Cal.App.4th at p. 1091; *People v. Contreras* (2015) 237 Cal.App.4th 868, 889.)

Proposition 47 also created a new sentencing provision under section 1170.18. (*Rivera, supra,* 233 Cal.App.4th at p. 1092; see also, *People v. Delapena* (2015) 238 Cal.App.4th 1414 (*Delapena*).) Pursuant to section 1170.18, a person currently serving a felony sentence for an offense that is now a misdemeanor under Proposition 47 may petition for a recall of that sentence, to request resentencing. (*Rivera, supra,* 233

13

Cal.App.4th at p. 1092*, see also, People v. Morales* (2015) 238 Cal.App.4th 42, 46.)  For persons who have completed felony sentences for offenses that would now be misdemeanors under Proposition 47, section 1170.18, subdivision (f) provides for an application to the trial court to have the felony convictions designated as misdemeanors. (*People v. Rivera, supra,* 233 Cal.App.4th at p. 1093; *People v. Morales, supra,* 238 Cal.App.4th at p. 47.)

Defendant acknowledges that section 3, provides a default rule of non-retroactivity, but urges us to apply the statute retroactively as an ameliorative statute, within the meaning of *In re Estrada* (1965) 63 Cal.2d 740.  This argument was recently rejected by the Sixth Appellate District in *Delapena*, and we reject it, also.

In *Delapena*, the reviewing court reasoned that the rule in *Estrada* is not implicated where the Legislature signals an intent to make a statute prospective, by the inclusion of either a savings clause or its equivalent.  (*Delapena, supra,* 228 Cal.App.4th at p. 1425, citing *People v. Nasalga* (1996) 12 Cal.4th 784, 793.)  It went on to explain that if there is no express saving clause, one will be implied if the Legislature or electorate has demonstrated its intention with sufficient clarity that a reviewing court can discern and effectuate it.  (*Delapena, supra,* at p.1425.)  That court examined section 1170.126, providing a procedure for a prisoner to seek resentencing under the Three Strikes Reform Act (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C)), which has been held to constitute the functional equivalent of a savings clause.  (*Delapena, supra,* at p. 1425, citing *People v. Yearwood* (2013) 213 Cal.App.4th 161, 172.)  By a parity of

reasoning, the *Delapena* court concluded that the enactment of section 1170.18 evinced an implied intent that Proposition 47 be applied prospectively only. (*Delapena,* at p. 1426.)

We agree with this analysis and conclude that the enactment of section 1170.18 was the functional equivalent of a savings clause. Defendant may file a petition for recall of the sentence pursuant to that provision or pursue other legal remedies.

4. *The Sentencing Minutes Require Correction.*

The sentencing minutes of June 16, 2014, include a section entitled "PROCEEDINGS," indicating that the "Action came on for PC 859A [*sic*] Sentencing." It goes on to indicate that the "Court confirms PC859A Plea." Because defendant was tried and convicted by jury, this information is in error and must be corrected. The clerk is directed to correct the minute order.

## DISPOSITION

The clerk of the court is directed to amend the minute order relating to the sentencing hearing to delete all reference to a section 859a plea, to reflect that defendant was tried by a jury. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

15